# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMER TYRONE LEWIS, | CASE NO. 1:07-cv-519-OWW-DLB (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S COMPLAINT AND REQUIRING PLAINTIFF TO FILE AN AMENDED COMPLAINT WITHIN THIRTY DAYS |
| v. | |
| JOHN TILTON, et al., | (Doc. 1) |
| Defendants. | |

I.    Screening Order

    A.    Screening Requirement

Plaintiff Homer Tyrone Lewis ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on April 2, 2007.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious;" that fail to state a claim upon which relief may be granted; or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

   B. Summary of Plaintiff's Complaint

   Plaintiff is an inmate housed at the California Department of Corrections and Rehabilitation State Prison in Corcoran, where plaintiff is presently incarcerated. Plaintiff names as defendants: James E. Tilton as Director of the California Department of Corrections and Rehabilitation ("CDCR"); Derral G. Adams, as Warden of California State Prison – Corcoran; James D. Hartley, as Associate Warden; M.H. Botello, as Correctional Captain; C.M. Boyer and D.B. Scaife, as Correctional Sergeants; and Correctional Officer J. Corbin, in their individual and official capacities. Plaintiff is seeking compensatory damages, punitive damages, reasonable costs and attorney's fees, and other equitable relief.

   Because plaintiff sets forth all of his factual allegations in narrative form and then lists separately his claims for relief, some difficulty in ascertaining the precise bases for plaintiff's claims results.

   Plaintiff appears to allege that, in retaliation for his filing grievances regarding the conditions of confinement in the Protective Housing Unit (PHU) and for staff misconduct as to Corbin's "over-familiarity" with another inmate, plaintiff was subjected to "Hatred and Prison Guard ('Retaliation')." Plaintiff alleges that, because of his use of the grievance system: (1)

Corbin attempted to secure plaintiff as a confidential-informant such that his safety in the PHU would be put in jeopardy; (2) that when plaintiff refused to become a confidential-informant, Corbin became very upset; that thereafter, plaintiff was removed from the PHU to the SHU based on allegations subsequently deemed un-true by inmate J. West, which had been made at the behest of Corbin; (3) that Corbin made false accusations against plaintiff in attempt(s) to facilitate an unwarranted lock-up order; (4) Corbin broke into plaintiff's "legal mail" and ascertained that plaintiff's complaints were about Corbin; (5) that Corbin falsely accused plaintiff of making threats against another PHU inmate and secured plaintiff's transfer to the SHU to silence and humble plaintiff in to refraining from filing further grievances; (6) that Corbin requested law library staff to monitory all of plaintiff's legal mail being sent out; (7) that prison officials are engaged in a conspiracy to transfer plaintiff to another prison knowing plaintiff has an open-contract on his life due to his testimony against gang members; and (8) that plaintiff has been denied the right to seek the assistance of a known "Jailhouse Lawyer."

   C. <u>Plaintiff's Section 1983 Claims</u>

Aside from his claims of retaliation, it is, at best, unclear which specific constitutional claims plaintiff is attempting to pursue in this action. Based on the allegations in plaintiff's complaint, he may be able to plead some claims for relief under section 1983, that are not yet cognizable to the court. However, a number of the events complained of by plaintiff, as plead, do not rise to the level of constitutional violations.

The court will provide plaintiff with the opportunity to file an amended complaint that complies with Rule 8(a) and sets forth for each defendant's name, what action that defendant took or failed to take, and why (e.g., to retaliate against plaintiff for filing inmate grievances). In the subsections that follow, the court will provide plaintiff with the legal standards that, based on plaintiff's allegations, appear to be applicable. Plaintiff should utilize the legal standards provided in this order for guidance when filing his amended complaint.

    1. <u>Linkage Requirement</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes

> to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Plaintiff has named seven defendants in this action. However, as best as the court can decipher, plaintiff only states facts as to wrongful acts which are attributed to one defendant – Corbin. In order to proceed under section 1983, plaintiff must allege sufficient facts to support a claim that *each* defendant named in the complaint either acted or failed to act in a manner that was adverse to plaintiff and that the defendant(s) did so in retaliation against plaintiff for either litigating in court or filing inmate grievances. Plaintiff is cautioned that in his amended complaint, he must clearly identify what actions or omissions led to the violation of his rights and which defendants were responsible for the acts or omissions.

        2.     <u>Retaliation</u>

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

4

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff states that his constitutional rights were violated by the unjustified and "penologically" unnecessary retaliation, interference, and punishment of the plaintiff by the defendant(s) in their malicious and conspiratorial transfers of him from the PHU to the SHU so as to place plaintiff's life in danger to punish, humble, and silence plaintiff from filing inmate

5

grievances and pursuing his constitutional rights for redress. Doc. 1, pg. 14, para 38. Thus, plaintiff has alleged the requisite elements for retaliation. However, plaintiff has failed to name any defendants in connection with his claims of unconstitutional retaliation. It appears that Corbin may have engaged in retaliation against plaintiff, but plaintiff does not clearly so allege. Therefore, plaintiff has failed to adequately state a claim for retaliation against any of the named defendants.

                3.      Interference with Plaintiff's use of the Prison Grievance System

To the extent plaintiff attempts to state a claim relating to the processing of his use of the grievance system within the prison, plaintiff is advised that, "[a prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); Sandin v. Conner, 515 U.S. 472, 484 (1995) (Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); see also Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). The failure to process a grievance does not state a constitutional violation, and a prison official's involvement and actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. There is no constitutionally protected right to an appeals process and there is no constitutionally protected right to a particular outcome. Even if interference with plaintiff's use of the prison grievance occurred in retaliation for his prior use of that system, defendants' actions in interference with and/or reviewing and issuing decisions on the appeals do not provide a basis upon which to impose liability under section 1983. Therefore, any claims plaintiff is attempting to assert, regarding the interference

with his use of the prison grievance system do not rise to the level of a protected constitutional right.

          4.    Interference with Plaintiff's Mail

          a. Personal Correspondence

Plaintiff does not appear to allege that his personal correspondence was handled in violation of his constitutional rights. However, the court provides the following for plaintiff's reference in the event that he intended to state such claims that the court is simply unable to decipher from his complaint.

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, the court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

Plaintiff fails to state a constitutional violations by the defendant(s) as he fails: to attribute such denials to any specific defendant(s); to state any specific facts relating to such alleged denials/interference with his personal mail; and to identify the regulation (if any) that such denials were auspiciously conducted under.

          b. Legal Correspondence

The mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence does not state a claim for violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996). Prison officials may, consistent with the First Amendment, open mail from attorneys in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539,

7

576-7 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). In Wolff v. McDonnell, the Supreme Court noted that inspecting mail from attorneys in the presence of the inmate did all, and perhaps even more, than the Constitution requires. Id. at 577.  The issue of whether or not prison officials may also, consistent with the First Amendment, open and visually inspect mail from attorneys outside the presence of the prisoner has not been decided by the Supreme Court or by the Ninth Circuit.  In Wolff v. McDonnell, the legal mail at issue was mail sent to respondent from his own attorney.  Correspondence between an attorney and a client is entitled to special protection under the attorney-client privilege.

"Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996).  "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987).  Thus, plaintiff does not have a protected interest in not having his mail to and from the court's opened and examined by prison officials.

Plaintiff fails to state whether the "legal mail" he refers to as being tampered with is correspondence with the courts, with his retained attorney, or with the prison grievance system, although it appears to possibly be the latter.

Plaintiff's allegation that Corbin took it upon himself to retrieve plaintiff's outgoing mail, break the seal, and discover the contents were about Corbin, do not rise to a violation of plaintiff's constitutional rights.  Likewise, Corbin's request that law library peace officers keep a "close-eye" and record of any/all plaintiff's "legal mail" being sent out does not rise to a violation of plaintiff's constitutional rights.

Plaintiff is referred to the discussion above under "3. Interference with Plaintiff's use of the Prison Grievance System" for the thefts of plaintiff's mail regarding his filings within the prison grievance system.

Thus, plaintiff has failed to state a claim for any violation of his constitutional rights as a result of interference with his correspondence.

///

### 5. Cruel and Unusual Punishment

Plaintiff alleges that his being transferred from the PHU to the SHU so as to place his life in danger to punish, humble an silence him, constituted cruel, unusual, and unjust treatment.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). An officer

9

can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

It appears to the court that plaintiff alleges that Corbin made false allegations against plaintiff, to secure his transfer from the PHU to the SHU, so as to place plaintiff's life in danger as a means of punishing, humbling and/or silencing plaintiff into refraining from filing grievances. This does not amount to the use of excessive *physical* force in violation of the Cruel and Unusual Punishments Clause.

Plaintiff has not alleged specific action(s) against any of the other named defendant(s) to support claims for failure to intercede on his behalf. Additionally, plaintiff fails to allege what, if any injury he sustained, as a result of his transfers from the PHU to the SHU and back again. Therefore, plaintiff has failed to state a claim for violation of his constitutional rights due to cruel and unusual punishment.

### 6. Failure to Protect

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray 682 F.2d 1237, 1250-51 (9th Cir. 1982); see also Farmer v. Brennan 511 U.S. 825, 833 (1994).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

To grant injunctive relief concerning serious risks to the inmate's safety, the court must find that at the time the relief will be granted there is still a serious, present risk to the inmate and

1  that the prison officials are still acting with deliberate indifference to that risk. Farmer, 511 U.S.
2  at 845-47; see also Helling v. McKInney 509 U.S. 25, 35-36 (1993) (discussing injunctive relief
3  where there is a threat of harm to inmate's health).
4        The Ninth Circuit has held that placing a pre-operative transsexual, who acts and dresses
5  effeminately, in the prison's general population evidenced of deliberate indifference to an
6  inmate's safety. Farmer, 511 U.S. at 848-49; cf. Redman v. County of San Diego, 942 F.2 1435,
7  1444-45 (9th Cir. 1991)(en banc)(concluding that placing a young pre-trial detainee in a cell with
8  a known aggressive sexual offender was deliberate indifference to the detainee's safety). The
9  Ninth Circuit has also held that allegations that prison officials called a prisoner a "snitch" in the
10 presence of other inmates were sufficient to state a claim of deliberate indifference to an inmate's
11 safety. See Valandingham v. Bojorquez, 866 F.2d 1135, 1139 (9th Cir. 1989). But see also
12 Morgan v. MacDonald 41 F.3d 1291, 1293-94 (9th Cir. 1994) (rejecting Eighth Amendment
13 claim where prisoner who had been labeled a snitch had not been retaliated against).
14       Plaintiff asserts that on October 18, 2005 he was moved from the PHU to the SHU, and
15 that the next day, after the charging allegation was deemed untrue, he was released from the
16 SHU. Doc. 1, pg. 10. Plaintiff asserts that on March 24, 2005, he was placed in the SHU; that on
17 March 28, 2005 he was assessed as posing no threat to inmate West, and "shortly thereafter" was
18 released from the SHU and returned to the PHU. Doc. 1, pg. 12. It appears to the court that
19 plaintiff might be attempting to assert that Corbin instigated erroneous charges against plaintiff
20 so as to instigate plaintiff's transfers from the PHU to the SHU; that in doing so, Corbin knew of
21 the basis for plaintiff's original placement in the PHU (due to plaintiff's activities of testifying
22 against gang members regarding gang related activities of various inmates and that a contract
23 exists on plaintiff's life as a result) such that plaintiff's life would be in danger on transfer to the
24 SHU. However, the facts do not show any injury or damage to plaintiff as a result of his transfers
25 from the PHU to the SHU. Thus, plaintiff has failed to state a claim for violation of his
26 constitutional rights in this regard.
27 ///
28 ///

7. Due Process – Liberty

Plaintiff claims that his Fourteenth Amendment rights to due process were violated when he was denied a fair hearing and protection prior to his removal from the PHU and transfer to the SHU.

The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson, 125 S.Ct. at 2393; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in remaining in the general population, see Sandin v. Conner 515 U.S. 472, 485-86 (1995) and Hewit, 459 U.S. at 468 or in not losing privileges, Baxter v. Palmigiano 425 U.S. 308, 322 (1976).

However, when a prisoner is placed in administrative segregation[1], prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. See Hewitt, 459 U.S. at 473.

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff asserts that on October 18, 2005 he was moved from the PHU to the SHU, and

---

[1] Administrative segregation is a catch-all phrase for any non-punitive segregation. For example, prisoners may be segregated to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. See Hewitt, 459 U.S. at 468.

12

that the next day, after the charging allegation was deemed untrue, he was released from the SHU. Doc. 1, pg. 10. Plaintiff also asserts that on March 24, 2005, he was placed in the SHU; that on March 28, 2005 he was assessed as posing no threat to inmate West; and "shortly thereafter" was released from the SHU and returned to the PHU. Doc. 1, pg. 12. Assuming that moving plaintiff from the PHU to the SHU falls under administrative segregation, plaintiff has failed to show that the review of the evidence against him was not conducted within a reasonable time from his removal from the PHU and placement in the SHU (the first review and result occurred within 24 hours, and the second review and result occurred within just a few days). Plaintiff did not allege that either of his removals from the PHU and placement in the SHU occurred without review. Thus, plaintiff has not stated a violation of his constitutional rights under the Fourteenth Amendment.

        8.    <u>1st Amendment – Access to Jailhouse Lawyer.</u>

A prisoner's legal assistance to other inmates is protected by the First Amendment. See <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1985). Prison officials must allow prisoners to assist one another with habeas corpus petitions, see <u>Johnson v. Avery</u>, 393 U.S. 483, 490 (19969), and with civil rights actions, see <u>Wolff v. McDonnell</u>, 418 U.S. 539, 577-580 (1974), where the state does not provide assistance.

Plaintiff fails to state any facts to support his allegations as to interference with his contact with other inmates in relation to his civil rights actions. Plaintiff also fails to name, which, if any specific defendant denied him the ability to provide assistance to and/or receive assistance from another inmate regarding his civil rights claims. Thus, plaintiff has failed to state a claim for violation of his constitutional right in this regard.

        9.    Conditions of Confinement

Plaintiff indicates a number of violations by staff designated to the PHU, which were apparently the basis and/or subject of plaintiff's use of the grievance system for which he feels he is now being retaliated against. Doc 1, pg. 8. However, the court is unable to discern whether plaintiff is making any claims at this time for constitutional violations regarding the conditions of his confinement. Plaintiff does not name any defendants he feel are responsible for those

violations. Yet, the court provides plaintiff the necessary law for making claims regarding the conditions of his confinement which must be met when/if he files an amended complaint.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

1   As stated above, plaintiff has not adequately stated a claim for relief under section 1983
2   for violation of the Eighth Amendment regarding his conditions of confinement in as much as he
3   has not named any specific defendant actors, nor the acts they engaged in so as to amount to the
4   general conclusions plaintiff states on page 8 of his complaint.  Any such allegations regarding
5   his conditions of confinement, while not yet adequate, may be able to be amended so as to
6   adequately state additional cognizable claims for relief under section 1983 for violation of the
7   Eighth Amendment.  Plaintiff is reminded that his allegations must also indicate that any
8   defendant actors were deliberately indifferent to a substantial risk of serious harm to plaintiff.
9   Frost, 152 F.3d at 1128.

   10.   Transfers

Prisoners have no liberty interest in avoiding being transferred to another prison.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); United States v. Brown 59 F.3d 102, 105 (9th Cir. 1995) (per curiam); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989).

Prisoners do, however have a liberty interest in not being transferred for involuntary psychiatric treatment.  See Vitek v. Jones, 445 U.S. 480, 494 (1980).

Prisoners also may not be transferred in retaliation for exercising their First Amendment rights.  See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985).

Plaintiff states that there is a "Calculated Campaign of Conspiracy to Transfer the Plaintiff against his will to another prison in ('Retaliation')."  Doc. 1, pg. 13.  However, plaintiff has not stated: that he has been transferred; that any transfer is currently pending; or the names of any of the defendants responsible for his allegations regarding any such transfer.  Therefore, he has failed to state a claim for being transferred in retaliation for exercising his First Amendment rights.

/ / /
/ / /
///

     11.  Supervisory Liability Claim

  Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

  In his caption, and under the subheading of "III. Parties," plaintiff names the following supervisory personnel defendants: "James E. Tilton as Director of the California Department of Corrections and Rehabilitation ("CDCR"); Derral G. Adams, as Warden of California State Prison – Corcoran; James Hartley, as Associate Warden; M.H. Botello, as Correctional Captain; C.M. Boyer and D.B. Scaife, as Correctional Sergeants;. . . . In their individual and official capacities."

  As to each defendant in a supervisorial position, plaintiff must allege facts giving rise to a claim for relief under section 1983. Plaintiff states general allegations as to the practice and condoning of policies by correctional officers and their subordinates. However, plaintiff fails to state which of the defendants in a supervisory position he feels errantly condoned and implemented the alleged policies. The only supervisory defendant referred to by name in the body of plaintiff's complaint is Sergeant Scaife. Plaintiff alleges that Sergeant Scaife conducted a threat assessment and concluded (1) that plaintiff posed no threat to another PHU inmate, and

(2) that plaintiff should be returned to the PHU. Doc. 1, pg. 12. As plaintiff is complaining about actions by defendants that removed him from the PHU, and Sergeant Scaife recommended plaintiff be returned to the PHU, the court is unable to ascertain what, if any actions by Sergeant Scaife, plaintiff feels were wrongful.

Plaintiff may be able to state cognizable claims for relief against the named defendants in supervisorial positions under section 1983. However, the court is unable to identify any such claims at this time.

### 12. State Law Claims

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Plaintiff states that he "... invokes the pendent jurisdiction of this court." Doc. 1, pg. 5. However, plaintiff fails to reference any state law or make any claims thereunder. Plaintiff may be able to state a claims for relief under section 1983. Therefore, the court reserves discretion to exercise supplemental jurisdiction over and to address plaintiff's state law claims after plaintiff files his amended complaint so as to allow plaintiff opportunity to state cognizable claims for relief under section 1983.

## II. Conclusion

For the reasons set forth above, plaintiff's complaint is dismissed, with leave to file an amended complaint within thirty days.

1  Plaintiff must demonstrate in his complaint how the conditions complained of have
2  resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227
3  (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is
4  involved.  There can be no liability under section 1983 unless there is some affirmative link or
5  connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423
6  U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588
7  F.2d 740, 743 (9th Cir. 1978).

8  Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be
9  complete in itself without reference to any prior pleading.  As a general rule, an amended
10 complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).
11 Once plaintiff files an amended complaint, the original pleading no longer serves any function in
12 the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the
13 involvement of each defendant must be sufficiently alleged.

14 Accordingly, based on the foregoing, it is HEREBY ORDERED that:
15     1. Plaintiff's complaint is dismissed, with leave to amend;
16     2. The Clerk's Office shall send plaintiff a civil rights complaint form;
17     3. Within **thirty (30) days** from the date of service of this order, plaintiff must
18        either:
19        a. File an amended complaint curing the deficiencies identified by the court
20          in this order, or
21        b. Notify the court in writing that he does not wish to file an amended
22          complaint and wishes to proceed only on the claims identified by the court
23          as viable/cognizable in this order; and
24     4. If plaintiff fails to comply with this order, this action will be dismissed for failure
25        to obey a court order.
26 IT IS SO ORDERED.

27 **Dated:   January 30, 2008**                    /s/ **Dennis L. Beck**
                                                   UNITED STATES MAGISTRATE JUDGE
28